**PASCOAG RESERVOIR &
DAM, LLC, Plaintiff,**

v.

The State of RHODE ISLAND, acting by and through Jan Reitsma, in his capacity as Director of the Rhode Island Department of Environmental Management and Sheldon Whitehouse, in his capacity as Attorney General for the State of Rhode Island, Defendants.

No. C.A. 01–505L.

United States District Court, D. Rhode Island.

Aug. 20, 2002.

Barry J. Kusinitz, Providence, RI, for plaintiff.

James R. Lee, Attorney's Office, Mary E. Kay, R.I. Department of Environmental Management, Office of Legal Services, Claire J.V. Richards, Office of the Governor, Providence, RI, for defendant.

## OPINION AND ORDER

LAGUEUX, Senior District Judge.

This lawsuit is the latest chapter in a contentious dispute between the State of Rhode Island ("State") through the Department of Environmental Management ("DEM") and Pascoag Reservoir & Dam, LLC ("Pascoag"). Plaintiff, Pascoag, claims that the State has engaged in a taking of its property, and that the United States and Rhode Island Constitutions mandate that compensation be paid to it for that property.[1] The taking of property, Pascoag alleges, was the acquisition of a portion of the Reservoir bottom by adverse possession and the acquisition of use of the Reservoir by prescriptive easement. The State has moved to dismiss the complaint, claiming that, as a matter of law, when a state acquires property by adverse possession or prescription that does not constitute a taking. The State also argues that any lawsuit based on a constitutional takings argument is barred by the statute of limitations.

The dispute places this Court at a curious juncture between property law and constitutional law. In property law, it is a straightforward proposition that, under certain conditions, title to property may, by operation of law, be transferred to another without compensation. In constitutional law, it is a straightforward proposition that the government cannot take private property without just compensation. This Court must determine how these two propositions interact with each other. Although defendant contends that the two areas of law are "mutually exclusive," they are not. Any state statute must adhere to the requirements of the United States Constitution. In this case, the Court concludes that plaintiff has alleged a takings claim against the State of Rhode Island. Since the Court holds that the taking occurred in 1975, plaintiff's claim, asserted twenty-six years after the taking, is too stale to warrant prosecution. Therefore, plaintiff's federal takings claim is dismissed. Plaintiff's remaining state law claims are also dismissed but without prejudice because

---

1. Although the complaint does not so state, the Court treats this action as though plaintiff brings it pursuant to 42 U.S.C. § 1983.

this Court declines to exercise supplemental jurisdiction over those state claims.

## ISSUES PRESENTED

This complaint was filed in this Federal District Court on October 18, 2001. The complaint asserts four claims against the State. Count I alleges that the State has violated the Takings Clause of the Fifth and Fourteenth Amendments to the United States Constitution. Count II alleges that the State has violated the Takings Clause of the Rhode Island Constitution. Count III seeks a declaratory ruling that the State is responsible for the repair, maintenance, and upkeep of the Pascoag Reservoir and dam. Count IV seeks reimbursement for any local taxes and assessments paid to the Towns of Burrillville and Glocester, and any local fire districts. With the exception of Count I, plaintiff's claims are based on state law. Defendant has moved to dismiss the whole complaint for failure to state a claim upon which relief can be granted.

## JURISDICTION

As plaintiff has alleged a constitutional violation in Count I, this Court's jurisdiction is based on the federal question raised in the complaint. 28 U.S.C. § 1331. The constitutional violation stems from the Fifth and Fourteenth Amendments to the U.S. Constitution. 28 U.S.C. §§ 2201, 2202 provides a form of relief, declaratory judgment, for such violations. Because plaintiff seeks damages for a violation of a constitutional right, the Court treats this action as brought pursuant to 42 U.S.C. § 1983. As the remaining counts are state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to consider such matters.

## STANDARD OF REVIEW FOR RULE 12(b)(6) MOTION TO DISMISS

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the Court construes the complaint in the light most favorable to plaintiff, taking all well-pleaded allegations as true and giving plaintiff the benefit of all reasonable inferences. Fed.R.Civ.P. 12(b)(6); *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990). Because a 12(b)(6) motion often comes in the early stages of the litigation, dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Judge v. City of Lowell*, 160 F.3d 67, 72 (1st Cir.1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

In a Rule 12(b)(6) motion, the Court generally may examine only the pleading itself. In a notice pleading system, the pleading serves to inform defendant of the claims made against him or her. *Langadinos*, 199 F.3d at 72–73. The Court need not accept unsupported conclusions or interpretations of law. *Washington Legal Found. v. Massachusetts Bar Found.*, 993 F.2d 962, 971 (1st Cir.1993). If the pleading fails to make out a legal claim upon which relief can be granted or fails to allege any facts that would support a legal claim, the pleading is insufficient and should be dismissed. *See Correa–Martinez*, 903 F.2d at 52–53.

## BACKGROUND AND FACTS

### A. *Facts as Plaintiff Alleges*

The complaint alleges the following facts. Pascoag is the owner of record of the Pascoag Reservoir ("Reservoir"). The Reservoir is located in the Towns of Burrillville and Glocester, Rhode Island. The Reservoir is a man-made body of water consisting of approximately 350 acres, originally created in 1860 by various riparian mill owners as a source of power for their mills. Plaintiff's predecessors in title

have been the Pascoag Reservoir Association, the Pascoag Reservoir Corporation, and the Pascoag Investment Corporation. In 1965, the State constructed a boat ramp into the Reservoir. In 1995, title to the Reservoir in fee simple was conveyed to plaintiff. Intermittently, between 1987 and 1997 the State unsuccessfully negotiated to buy the Reservoir. In 1997, DEM notified Pascoag in writing that the State had acquired an interest in the Reservoir by adverse possession or prescription. DEM then filed suit in Rhode Island Superior Court to enforce its claim.

## B. *Determinations of State Law*

On June 20, 2001, the Rhode Island Supreme Court held that the State had acquired portions of the Reservoir bottom by adverse possession[2] and had acquired, on behalf of the public, a prescriptive easement to use the boat ramp to obtain access to the Reservoir for recreational purposes. *Reitsma v. Pascoag Reservoir & Dam, LLC,* 774 A.2d 826, 838 (R.I.2001)(3–2) (overruling the trial court). The effect of that decision, and particularly the finding of a public easement by prescription, is to prevent the drainage or alteration of the Reservoir by plaintiff and to allow the public continuous access to the Reservoir for recreational use. The Supreme Court held that the State had begun to use the Reservoir property in 1965 and, under the

Rhode Island ten year adverse possession statute, had acquired title to a portion of the Reservoir plus an easement in 1975. *Id.*

## C. *Adverse Possession and Easement by Prescription*

 Adverse possession and prescriptive easements are creatures of state law, not federal law. Chapter 7 of Title 34 of the Rhode Island General Laws sets forth the statutory definition of adverse possession and prescription.[3] Adverse possession is a method of transferring title in fee simple of a portion of real property. Certain conditions must be maintained over a period of time set by statute. R.I. Gen. Laws § 34–7–1. In Rhode Island, to complete a transfer of title by adverse possession, the claimant's possession must be actual, open, notorious, hostile, under claim of right, continuous, and exclusive. *Del-Sesto v. Lewis,* 754 A.2d 91, 94–95 (R.I. 2000). The possession must be over ten years, the statutory period for adverse possession. R.I. Gen. Laws § 34–7–1. Similarly, prescription is a method of creating an easement by comparable criteria as adverse possession. The creation of an easement by prescription is the creation of a right to use and title to use that cannot be revoked. *Greenwood v. Rahill,* 122 R.I. 759, 412 A.2d 228, 230 (1980) ("Once the state had acquired a prescriptive easement

---

**2.** The portion of the Reservoir bottom that the State adversely possessed is the portion that lies under the part of the boat ramp that extends into the Reservoir.

**3.** "Conclusive title by peaceful possession under claim of title.-Where any person or persons, or others from whom he, she or they derive their title, either by themselves, tenants, or lessees, shall have been for the space of ten (10) years in the uninterrupted, quiet, peaceful and actual seisin and possession of any lands, tenements or hereditaments for and during that time, claiming the same as his, her or their proper, sole and rightful

estate in fee simple, the actual seisin and possession shall be allowed to give and make a good and rightful title to the person or persons, their heirs and assigns forever; and any plaintiff suing for the recovery of any such lands may rely upon the possession as a conclusive title thereto, and this chapter being pleaded in bar to any action that shall be brought for the lands, tenements or hereditaments and the actual seisin and possession being duly proved, shall be allowed to be good, valid and effectual in law for barring the action." R.I. Gen. Laws § 34–7–1.

..., no act of plaintiffs could divest the state of that right since such an easement conveys a good and rightful title forever.").

Adverse possession is an ancient English common law doctrine to clarify title in land. Tiffany Real Property § 1133 (3d ed.1975). The defense of adverse possession acted as a bar to ejectment actions. Although various forms of adverse possession appeared in English law as early as 1100 A.D., the current form of adverse possession-a fixed number of years operating as a statute of limitation against claims to land-was adopted by the Statute of James in 1623. *Id.* After a certain period of time, claims to land can no longer be asserted, thus preventing "illegal claims after the evidence necessary to defeat them has been lost" and advancing the community's interest in "the security of title." *Id.* at § 1134. Furthermore, adverse possession discourages record owners from "sleeping on their rights" by neglecting to take the appropriate legal steps to maintain their possession. *See id.*

An easement is a right to use another's property in a certain manner that simultaneously acts as a limitation on that other person's ability to use his or her property in an unrestricted manner. II American Law of Property § 8.4 (1952). It is a property right against the subjected land as well as all other parties. *Id.* at § 8.5. It cannot be terminated by the possessor of the land subject to it. *Id.* at § 8.14. An appurtenat easement is an easement that is tied to a specific parcel of land and is not a personal right. Tiffany Real Property § 1193. The easement benefits that land and the possessor's use and enjoyment of that land. Here, the easement is appurtenant to the parcel of land that was adversely possessed by the State. One can only acquire a prescriptive right over something that could otherwise be granted. Therefore, for example, one cannot

acquire by prescription rights to land held in public trust because such rights can never be granted by the State. *Id.* at § 1192.

■ Under Rhode Island law, the State may acquire title by adverse possession or prescription. *Reitsma*, 774 A.2d at 838 (state acquires title by adverse possession and easement by prescription); *Greenwood*, 412 A.2d at 230 (state acquires easement by prescription). Additionally, the United States Supreme Court has held that officers of the United States, sued for trespass, may raise a defense of lawful title by adverse possession. *Stanley v. Schwalby*, 147 U.S. 508, 519, 13 S.Ct. 418, 37 L.Ed. 259 (1893).

PRELIMINARY MATTERS

As a preliminary matter, this Court must define the narrow scope of the legal issue that this Court may consider. Additionally, the Court must resolve some affirmative defenses alluded to by defendant. Defendant argues that the doctrine of res judicata bars plaintiff from pursuing this action because the takings issue and the statute of limitations issue were determined by the Rhode Island Supreme Court. At the hearing on this motion, defendant also argued that the Rooker–Feldman doctrine prohibits this federal court from reviewing the state court decision. Plaintiff argues that the takings issue was never properly before the Rhode Island Supreme Court, and that any statements made on the takings issue by the Rhode Island Supreme Court should be disregarded as dicta. In addition, as a jurisdictional prerequisite, this Court must determine if this issue is ripe for a federal court's consideration.

A. *Conclusions of State Law*

■ This Court cannot revisit the conclusion of the Rhode Island State Supreme

Court on an issue of state law. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State."). A state Supreme Court has the final word on what constitutes adverse possession or easement by prescription. *See id.* The precise issue of adverse possession and prescription in this case has been litigated and determined by the Supreme Court of Rhode Island. *Reitsma,* 774 A.2d at 838. Principles of res judicata apply. This Court cannot revisit the Rhode Island Supreme Court's holding that the State acquired title in fee simple by adverse possession and an easement by prescription. This Court can only address the consequences of the State acquiring title to a piece of land by adverse possession and an easement by prescription. *See Erie R.R. Co.,* 304 U.S. at 78, 58 S.Ct. 817.

### B. *Claim Preclusion*

■■■ The doctrine of res judicata is a bar to a party litigating anew issues that have already been decided by a court. Defendant argues that plaintiff is precluded from litigating the takings claim because it was raised in a prior state court proceeding. Res judicata is a term that applies to two types of preclusion, claim preclusion and issue preclusion. *Liu v. Striuli,* 36 F.Supp.2d 452, 470–71 (D.R.I.1999). When a federal court examines whether a state court decision has a preclusive effect, the federal court must use the same law that a state court would employ in making such a determination. *Texaco Puerto*

*Rico, Inc. v. Medina,* 834 F.2d 242, 245 (1st Cir.1987). Therefore, this Court must apply state law to determine if res judicata applies. *See id.*

Claim preclusion acts as a bar to plaintiff taking a second bite at the apple through subsequent litigation. *ElGabri v. Lekas,* 681 A.2d 271, 276 (R.I.1996) (adopting Restatement (2d) of Judgments § 24). Claim preclusion encourages finality and consistency in judicial rulings. The Restatement sets forth the requirements for claim preclusion: "When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (2d) of Judgments § 24(1). In this case, the State is seeking to bar plaintiff from relitigating an issue that it raised as a counterclaim in state court.

■■■ Claim preclusion does not apply when a court reserves a party's right to maintain a second action, as happens when a court dismisses a claim without prejudice. "When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant: ... (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action."· Restatement (2d) of Judgments § 26(1)(b).[4] Here, the state trial court dismissed Pascoag's takings counter-

---

4. Following this section of the Restatement, the comments elaborate on the notion of a court expressly reserving the right to maintain a second action. "A determination by the court that its judgment is 'without prejudice' (or words to that effect) to a second action on the omitted part of the claim, ex-

pressed in the judgment itself, or in the findings of fact, conclusions of law, opinion, or similar record, unless reserved or set aside, should ordinarily be given effect in the second action." Restatement (2d) on Judgments § 26(1)(b) cmt. b.

claim without prejudice. *Reitsma,* 774 A.2d at 837. Pascoag notified the state court that it was preserving the issue for subsequent action and, thus, avoided the effects of claim preclusion. *See* Restatement (2d) on Judgments § 26(1)(b); *see also Lovely v. Laliberte,* 498 F.2d 1261, 1264 (1st Cir.1974).

Additionally, there was no final judgment on the merits as to Pascoag's takings claim. No court entered a judgment on the takings claim. *See Pure Distributors, Inc. v. Baker,* 285 F.3d 150, 156–57 (1st Cir.2002) (discussing the finality requirement). Pascoag raised the claim before the state court, but, as the Rhode Island Supreme Court noted in *Reitsma,* Pascoag's takings claim was dismissed without prejudice. 774 A.2d at 837. The Rhode Island Supreme Court does speculate that any takings claim would be barred by the statute of limitations. *Id.* at 838. Since that issue was not properly before the Court, however, any dicta on the takings issue is not a final judgment on the merits. *See Pure Distributors, Inc.,* 285 F.3d at 156–57. Claim preclusion does not bar this lawsuit.

### C. *Issue Preclusion*

■ Defendant additionally argues that issue preclusion prevents Pascoag from revisiting a determination that the statute of limitations bars plaintiff's takings claim. The Rhode Island Supreme Court adopted the following requirements for issue preclusion or collateral estoppel to apply: "(1) that there must be an identity of issues, (2) that the prior proceeding resulted in a final judgment on the merits, and (3) that the party against whom collateral estoppel

is asserted is the same as or is in privity with a party in the prior proceeding." *State v. Jenkins,* 673 A.2d 1094, 1096 (R.I. 1996). For an identity of issues to exist, "(1) the issue sought to be precluded must be identical to the issue determined in the earlier proceeding, (2) the issue must actually have been litigated in the prior proceeding, and (3) the issue must necessarily have been decided." *E.W. Audet & Sons, Inc. v. Firemen's Fund Ins. Co.,* 635 A.2d 1181, 1186 (R.I.1994).

■ As discussed *supra,* the statements made by the Rhode Island Supreme Court about the takings claim, including any statements concerning the statute of limitations, are not part of a final judgment and are not essential to that Court's judgment as the matter was not properly before that Court. Therefore, the issue was not actually litigated nor was it decided. *See id.* Issue preclusion does not bar plaintiff's takings claim in this case.[5]

### D. *Rooker–Feldman Doctrine*

■ The Rooker–Feldman doctrine is a basic principle of subject matter jurisdiction that federal district courts should not serve as appellate courts to state courts. *See, e.g., Wilson v. Shumway,* 264 F.3d 120, 123–26 (1st Cir.2001) (discussing the Rooker Feldman Doctrine). The only appropriate federal appellate court to a state court is the United States Supreme Court. *Id.* at 123; *see also Keating v. Rhode Island,* 785 F.Supp. 1094, 1098 (D.R.I.1992). Therefore, a federal district court should not review issues already determined by a state court. Even if the claim was not presented to a state court,

---

**5.** This Court notes that Rhode Island Supreme Court decisions on collateral estoppel or issue preclusion only discuss issue preclusion as it relates to questions of fact, not questions of law. *See, e.g., Jenkins,* 673 A.2d at 1096; *Audet* 635 A.2d at 1186. The Re-

statement (2d) of Judgments, on the other hand, discusses issue preclusion in the context of both issues of fact and law. Restatement (2d) of Judgments § 27. The applicable statute of limitations period is, of course, a question of law.

the Rooker Feldman doctrine "forecloses lower federal court jurisdiction over claims that are 'inextricably intertwined' with the claims adjudicated in a state court." *Picard v. Members of the Employee Ret. Bd.*, 275 F.3d 139, 145 (1st Cir.2001) (quoting *Sheehan v. Marr*, 207 F.3d 35, 39–40 (1st Cir.2000)). "Inextricably intertwined" is defined as a situation where the federal claim can only succeed if the state court claim fails. *Id.* In other words, the federal court would have to reverse the state court for the federal claim to prevail. *Id.*

▮ Here, the Rooker Feldman doctrine is not a bar to this litigation. *See id.* For the takings claim to succeed it is not necessary to reverse any part of the state court's decision. *See id.* It is precisely the issue of whether adverse possession or prescription constitutes a taking that Pascoag seeks to litigate here. If the state court's decision on the adverse possession and easement by prescription issue were to be reversed, plaintiff's takings claim could not be before this Court. *See id.* Plaintiff would be in possession of all of the property in question. The two claims, therefore, are not inextricably intertwined, and the Rooker–Feldman doctrine does not apply. *See id.* Furthermore, as the Rhode Island courts did not fully adjudicate and determine the question, the United States Supreme Court would not be able to review the decision made in *Reitsma* because that issue would not be ripe for Supreme Court review. *See, e.g., Yee v. City of Escondido*, 503 U.S. 519, 537–38, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) (declining to review a regulatory takings claim for lack of ripeness).

### E. Ripeness Doctrine

In the State's unwavering determination to argue that plaintiff's claims are stale or that the dispute has already been decided, the State ignores the argument that the claim may be premature. The United States Supreme Court has set forth certain ripeness requirements for a takings claim to be brought in federal court. *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

▮ If a case is not "ripe", then this Court generally lacks jurisdiction over the matter. *Faerber v. City of Newport*, 51 F.Supp.2d 115, 124 (D.R.I.1999). If the dispute is not ripe, then the Court would be engaged in abstract disagreements over matters that "may not occur as anticipated or may not occur at all." *Id.* (quoting *Riva v. Massachusetts*, 61 F.3d 1003, 1009 (1st Cir.1995)). Thus, the Court would be rendering a mere advisory opinion. Such advisory opinions are prohibited by Article III of the United States Constitution which requires federal courts to hear actual cases and controversies. *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir.1995). Because ripeness is part of the jurisdictional prerequisite for review, this Court is compelled to discuss the ripeness doctrine as it pertains to the Takings Clause of the Constitution despite the fact that defendant did not raise or brief the issue. *See* Fed. R.Civ.P. 12(h)(3) (Court must dismiss action sua sponte for lack of subject matter jurisdiction). Plaintiff did, however, make an anticipatory argument in its objection to the motion to dismiss.

▮ In *Williamson*, the Supreme Court set forth two requirements before a takings claim is ripe for federal court review. 473 U.S. at 186, 105 S.Ct. 3108. First, a party must obtain a final decision regarding the property interest. *Id.* Second, a party must utilize the state procedures for obtaining just compensation. *Id.* If those two requirements are not met, the takings claim is not ripe for review. *Id.* The first prong of the *Williamson* ripeness

test is satisfied. The Rhode Island Supreme Court issued a final decision regarding the property right. *Reitsma*, 774 A.2d at 838. The second prong of the test, whether the state procedures for compensation have been utilized, is not as straightforward. *See Williamson*, 473 U.S. at 194, 105 S.Ct. 3108. The state procedures must be utilized because the Constitution does not prohibit the state from taking property, it only prohibits the state from taking property and not paying just compensation. *Id.* at 194–95, 105 S.Ct. 3108.

. If compensation is paid, even at a date after the taking of the property, then there is no violation of the Constitution and no dispute for the Court to resolve. *See id.* at 195, 105 S.Ct. 3108. If the state lacks procedures, or its procedures are inadequate, then the takings claim would be ripe for review in federal court. *See id.* at 197, 105 S.Ct. 3108; *McKenzie v. City of White Hall*, 112 F.3d 313, 317 (8th Cir.1997) (noting that plaintiff had failed to establish that a state inverse condemnation action would be futile). State procedures would be inadequate when the state's highest court denies that compensation could be available for the government's action that affected a property interest. *See First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 312 n. 6, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987).

The situation presented here is unlike the scenario this Court faced in *Q.C. Const. Co. Inc. v. Verrengia*, 700 F.Supp. 86, 90 (D.R.I.1988). There, plaintiff had failed to establish that the state supreme court would refuse to acknowledge that inverse condemnation could be determined to be a taking and provide compensation. *Id.* This Court noted that although the Rhode Island Supreme Court had not determined that a person could seek compensation for an inverse condemnation claim

under state law, that Court had similarly not ruled that such a claim for compensation would not be allowed. *Id.* The Court distinguished that situation from the facts presented in *First English* where "plaintiff had been effectively denied compensation by the highest state court." *Id.* Because plaintiffs there had not attempted to seek compensation in state court, the claim was premature. *Id.* at 91; *see also Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 147 (1st Cir.2002) (dismissing takings claim filed in federal court on ripeness grounds when question of whether compensation was available had not been decided by the state's highest court).

Plaintiff argues that if an effort to obtain compensation from the State would be futile or otherwise unavailable, the ripeness requirement is satisfied. Plaintiff contends that because the State did not take property until the Rhode Island Supreme Court issued its ruling, it could not have sought compensation prior to that ruling. Additionally, plaintiff contends that because that ruling contains dicta that the State engaged in no taking of property, any effort to seek compensation under state procedures would be futile. Because further proceedings at the state level would be futile, plaintiff argues, the claim is ripe for review here in federal court.

Although plaintiff initially sought compensation in the Rhode Island state court system, the claim was dismissed without prejudice. *Reitsma*, 774 A.2d at 837. Subsequent to that dismissal, the Rhode Island Supreme Court intimated that when a state acquires property by adverse possession or an easement by prescription, the record owner has no cognizable takings claim. *Id.* at 837–38 (noting that even if a takings claim existed here, it would be time-barred). Thus, the Rhode Island Supreme Court has effectively barred any avenue for plaintiff to secure compensation

in state court. *See id.* If the state has no procedures by which a party can seek compensation as a post-depravation remedy, the second prong of *Williamson* is satisfied and the case is ripe for review by a federal court. *See* 473 U.S. at 197, 105 S.Ct. 3108; *see also City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 721, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) ("A federal court, moreover, cannot entertain a takings claim under § 1983 unless or until the complaining landowner has been denied an adequate post-deprivation remedy.").

## THE FEDERAL TAKINGS CLAIM

Plaintiff alleges that the State, when it acquired an easement by prescription and a portion of the Reservoir bottom by adverse possession, violated plaintiff's rights under the Takings Clause of the Fifth and Fourteenth amendments of the United States Constitution. Defendant moves to dismiss arguing that, as a matter of law, when the State acquires title by adverse possession and/or an easement by prescription, the State is not subject to the Takings Clause.

Therefore, the primary question before this Court is whether the acquisition of property interests by a state through adverse possession and prescription is subject to the Takings Clause of the United States Constitution. No federal court has addressed this question before. Several state courts, however, have discussed this issue. This Court notes at the onset that plaintiff is not challenging the State's ability to acquire title to property by adverse possession or prescription. As a matter of state law, the Rhode Island Supreme Court has determined that the state may acquire title to property in this manner. *Reitsma,* 774 A.2d at 838. This Court must only determine if just compensation is payable. As this is a motion to dismiss at the preliminary stages of litigation, the Court can only determine if plaintiff has alleged a sufficient takings claim in its complaint to warrant further proceedings.

### A. Federal Takings Clause

 The Fifth Amendment of the Constitution states that "private property shall not be taken for public use, without just compensation." U.S. Const. amend. V. The Fifth Amendment applies to the Federal Government. The Fourteenth Amendment, which applies to the states, does not contain the same Takings Clause; the Due Process Clause therein differs in that it does not mention just compensation. U.S. Const. amend. XIV. Nevertheless, the Takings Clause of the Fifth Amendment has been incorporated into the Fourteenth Amendment. *Chicago, B & Q. R.R. Co. v. City of Chicago,* 166 U.S. 226, 241, 17 S.Ct. 581, 41 L.Ed. 979 (1897). Therefore, the Takings Clause via incorporation applies to the states. *See id.*

 The Takings Clause generally has been held to apply to two types of governmental action: the taking of property by the government's eminent domain power and the taking of property by inverse condemnation. The power of eminent domain is an inherent sovereign power. *See* Tiffany Real Property § 1252. Eminent domain allows the government to take private property, for the benefit of the public, when compensation is paid. *Id.* Inverse condemnation occurs when government regulation, in effect, condemns some or all of the use of the property, diminishing the value to its owners to such an extent that it is as if the government had condemned the property. As Justice Oliver Wendell Holmes wrote eighty years ago in a seminal takings case: "The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon,* 260 U.S.

393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922). Inverse condemnation thus leads to the de facto taking by eminent domain through the state's power to regulate, whereas a taking by the eminent domain power is an explicit use of the sovereign power. *See City of Monterey,* 526 U.S. at 734–35, 119 S.Ct. 1624 (Souter J., concurring in part and dissenting in part) (noting that "the ultimate issue [of compensation] is identical in both direct and inverse condemnation actions.").

### 1. *Elements of a Takings Claim*

■■■■■ In a federal Takings Clause analysis, plaintiff must establish that property was taken by the government for public use without just compensation. U.S. Const. amend. V. The Fifth Amendment does not mandate that government cannot interfere with property rights, rather it mandates that the government must provide just compensation when an "otherwise proper interference amount[s] to a taking." *First English,* 482 U.S. at 315, 107 S.Ct. 2378. Thus, in an inverse condemnation case, the statute or regulation at issue is not invalidated, but the remedy is, in some situations, that compensation must be paid by the government to the property owner. *See id.* Thus, it is the Fifth Amendment that provides the remedy for an interference with property rights that rises to the level of a taking. *See id.* at 314–16 & n. 9, 107 S.Ct. 2378. The government does have the option, once a taking is judicially determined, to cease interfering with the property and pay compensation only for a "temporary" taking, but not for any subsequent "permanent" taking. *See id.* at 318, 107 S.Ct. 2378.

Many of the most complicated taking issues revolve around the concept of what the property interest is that was taken. Here, the property interest is straightfor-

ward. The property interest is the ownership of real property in fee simple and the ownership of an easement over another's property. *Reitsma,* 774 A.2d at 838. These are both classic property interests in land. This is not a case where government regulation leaves the property in the hands of the record owner, but the property has been so diminished by governmental regulation that there was a de facto taking of property. *See Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 124–27, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

For a takings claim to be prosecuted, the government must have taken the property interest. Here, by operation of law, title to these property interests was transferred to the State from a private entity. *Reitsma,* 774 A.2d at 838. The State has acquired title to the land in fee simple. The State has also acquired title to an easement by prescription.

The third element of a takings claim is that the taking must be for a public use. The public use requirement is generally viewed as a restriction on the government's eminent domain power. *Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 239–42, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) (discussing the public use requirement). The government cannot use that power unless its use is for the benefit of the public. *Id.* at 248, 104 S.Ct. 2321 (defining public use, however, as reaching to the full extent of the state's police power). Here, the State has taken the property interests specifically on behalf of the public for public use. This fact distinguishes this case from others where by operation of law title to land is transferred from one private entity to another for the benefit of the other.

In this case, title has been transferred from a private entity to the State for the benefit of the public. The State is thus

acquiring title expressly for the benefit of the public. The Rhode Island Supreme Court explicitly stated that was how the State was able to adversely possess the property and acquire an easement over the Reservoir. *Reitsma,* 774 A.2d at 838.

### 2. *United States Supreme Court Takings Clause Decisions*

Over the last twenty years, the United States Supreme Court has addressed governmental takings in great detail, developing a map for this Court to follow. The Supreme Court recognized that there are two types of per se takings where compensation is mandated. The first type is where governmental action has resulted in a permanent physical occupation of the property. *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 441, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). The second type of per se taking occurs when governmental regulation denies the owner of virtually all economically beneficial use of the property. *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). In each of these instances, just compensation is required. It is of little consequence that the governmental invasion is small or that the public purpose served is great. Even where there is no per se taking, there may still be a regulatory taking, but the Court must engage in an ad hoc factual inquiry to determine if just compensation is due. *Penn Central,* 438 U.S. at 124, 98 S.Ct. 2646.

Although the government may have admirable goals of land use regulation, the government's power to advance these goals is subject to the limits imposed by the Takings Clause. *See Dolan v. City of Tigard,* 512 U.S. 374, 396, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). These per se taking rules established by the Supreme Court form an outer limit to the govern-

ment's ability to effectuate public policy without compensation. *See id.* The per se rules serve "to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Nollan v. California Coastal Comm'n,* 483 U.S. 825, 835 n. 4, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) (quoting *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960)). Additionally, these limitations on the exercise of governmental power prevent a state from "sidestepp[ing] the Takings Clause by disavowing traditional property interests long recognized under state law." *Phillips v. Washington Legal Found.,* 524 U.S. 156, 157, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998).

A permanent physical occupation does not merely restrict the use of property, but results in the "practical ouster of his possession." *Loretto,* 458 U.S. at 428, 102 S.Ct. 3164 (quoting *Northern Transp. Co. v. Chicago,* 99 U.S. 635, 642, 25 L.Ed. 336 (1878)). It does not matter that the occupation may be small or that the occupation does not "seriously interfere with the landowner's use of the rest of his land." *Id.* at 430, 102 S.Ct. 3164. In *Loretto,* the Supreme Court cited cases where the Court had found that a permanent physical occupation was the equivalent of a governmental taking of ownership to the property. *See e.g., id.* at 430, 102 S.Ct. 3164 ("It would be as complete as if the United States had entered upon the surface of the land and taken exclusive possession of it.") (quoting *United States v. Causby,* 328 U.S. 256, 261, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946)); *id.* at 431, 102 S.Ct. 3164 ("[B]ecause there had been 'an actual taking of possession and control,' the taking was as clear as if the Government held full title and ownership.") (quoting *United States v. Pewee Coal Co.,* 341 U.S. 114, 116, 71 S.Ct. 670, 95 L.Ed. 809 (1951)); *accord Palazzo-*

*lo v. Rhode Island,* 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) ("The clearest sort of taking occurs when the government encroaches upon or occupies private land for its own proposed use.").

The Supreme Court continued its explication of the nature of a permanent physical occupation by discussing how such an occupation interferes with the property rights traditionally associated with ownership of real property. *Loretto,* 458 U.S. at 435–36, 102 S.Ct. 3164. The Court noted that, in the case of a permanent physical occupation, "the government does not simply take a single 'strand' from the 'bundle' of the property rights: it chops through the bundle, taking a slice of every strand." *Id.* at 435, 102 S.Ct. 3164. The rights at issue are the rights to possess, use, and dispose of property. *Id.* The owner is denied the power to exclude others from the property. *Id.* "The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights." *Id.* (citing *Kaiser Aetna v. United States,* 444 U.S. 164, 179–80, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979)). In *Kaiser Aetna,* the Court held that a navigational servitude that gave access to the public to a private pond was a constitutional taking that required just compensation. 444 U.S. at 179–80, 100 S.Ct. 383 ("In this case, we hold that the 'right to exclude,' so universally held to be a fundamental element of the property right, falls within this category of interests that the Government cannot take without compensation."). Related to the power to exclude, a permanent physical occupation denies the owner the power to control the use of the property. *Loretto,* 458 U.S. at 436, 102 S.Ct. 3164. Additionally, the occupation effectively strips from the owner the power to dispose of the property because it will "empty the right of any value, since the purchaser will also be unable to make any use of the property." *Id.* Final-

ly, the Court stated that when the action of the government allows a stranger to invade directly and occupy the property, there is a "special kind of injury." *Id.*

In *Nollan,* the United States Supreme Court ruled that a public easement was a permanent physical occupation for the purposes of the per se taking rule of *Loretto.* 483 U.S. at 831–32, 107 S.Ct. 3141. The Court stated that a taking occurs "for the purposes of that rule, where individuals are given a permanent and continuous right to pass to and fro, so that the real property may continuously be traversed, even though no particular individual is permitted to station himself permanently upon the premises." *Id.* at 832, 107 S.Ct. 3141; *see also Kaiser Aetna,* 444 U.S. at 180, 100 S.Ct. 383 ("And even if the Government physically invades only an easement in property, it must nonetheless pay just compensation."); *but see PruneYard Shopping Center v. Robins,* 447 U.S. 74, 82–85, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980) (concluding that the right to exclude students collecting signatures for petitions was not essential to the property right of a shopping mall when it could restrict the activity with reasonable time, place, and manner regulations).

The other per se taking occurs when governmental action denies the property owner of all economically beneficial use. *See Lucas,* 505 U.S. at 1015, 112 S.Ct. 2886. In *Lucas,* the Supreme Court offered a rationale for this per se rule: "the heightened risk that private property is being pressed into some form of public service under the guise of mitigating serious public harm." *Id.* at 1018, 112 S.Ct. 2886. The Court explained that where all economically beneficial use of land is denied, the state can only deny compensation when the interests that the state proscribes were never part of the owner's title. *Id.* at 1027, 112 S.Ct. 2886. In U.S.

Supreme Court parlance, this means that if the state action is part of the state's background principles of property law and nuisance law, no compensation is due. *Id.* at 1029, 112 S.Ct. 2886 ("Any limitation so severe cannot be newly legislated or decreed (without compensation) but must inhere in the title itself.").

*Lucas* contains little specific guidance on what supports these background principles of law. The Court stated that "[a] law or decree with such an effect must, in other words, do no more than duplicate the result that could have been achieved in the courts-by adjacent landowners (or other uniquely affected persons) under the State's law of private nuisance, or by the State under its complementary power to abate nuisances that affect the public generally, or otherwise." *Id.* The Court gave a few examples. When the state takes property by necessity to stop a fire, no compensation is due. *Id.* at 1029 n. 16, 112 S.Ct. 2886. When the state denies a permit to fill in a lake-bed that would have the effect of flooding others' land, no compensation is due. *Id.* at 1029, 112 S.Ct. 2886. When the state orders a nuclear plant to cease operations because it is situated on an earthquake fault, no compensation is due. *Id.* These, however, are all examples of nuisance and not other background principles of property law. With respect to property law, the Court cautioned however, that the state may not simply recast its action as a background principle of state law. *Id.* at 1031, 112 S.Ct. 2886 ("State, by ipse dixit, may not transform private property into public property without compensation.") (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 164, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980)). Instead, the state carries the burden of proving that the background principles allow a certain result. *Id.*

In a subsequent decision, the Court has explained that a background principle of property law is not simply any law or regulation that was in effect prior to an owner acquiring title. *Palazzolo,* 533 U.S. at 629–30, 121 S.Ct. 2448. A background principle must be more than a preexisting regulation. *See id.* Some courts have ruled that the law of public trust and the law of custom are background principles because land held in public trust or by custom was never part of a landowner's title. *See, e.g., Stevens v. City of Cannon Beach,* 317 Or. 131, 854 P.2d 449, 456 (Or.1993) (holding that by custom the public had always held the dry sand beach in fee simple absolute and that area was never part of the landowner's title); *Orion Corp. v. State,* 109 Wash.2d 621, 747 P.2d 1062, 1073 (1987) (holding that state's shoreline was held in public trust and any restrictions on use mandated by the public trust doctrine could not be a taking).

## B. *Analysis*

■ Here, the State has acquired title to a portion of the bottom of the Reservoir and an easement by prescription on behalf of the public to use the Reservoir for recreational purposes. The State did not act through its eminent domain power. The State, instead, utilized the adverse possession statute to acquire these property rights. Thus, this claim is a species of inverse condemnation. The statute, as applied, has condemned the property as if it had been taken by eminent domain.

When the State acquires title in fee simple to land, without compensation, it engages in a permanent physical occupation of property of the highest order. *See Loretto,* 458 U.S. at 427–28, 102 S.Ct. 3164. The State has permanent possession of the land, resulting in the ouster of the record owner. *See id.* It has acquired all of the sticks contained in the bundle of property

rights because it owns the land. *See id.* at 435, 102 S.Ct. 3164. The private individual has no property rights. *See id.* When the State acquires an easement on behalf of the public that terminates a property owner's right to exclude others from his or her land and allows any member of the public to enter and exit the property without restriction, the State has engaged in a permanent physical occupation. *See Nollan,* 483 U.S. at 831–32, 107 S.Ct. 3141. Both are per se violations of the takings clause. *See id.; Loretto,* 458 U.S. at 441, 102 S.Ct. 3164. Therefore, plaintiff has alleged a sufficient takings claim in the complaint in this case.

This Court also notes that because the State acquired title to a portion of the reservoir bottom, the State has wiped out all of plaintiff's economically beneficial use of that property. *See Lucas,* 505 U.S. at 1015, 112 S.Ct. 2886. Furthermore, the Court notes that as the State has placed the entire reservoir under a public easement, the State may well have wiped out all economically beneficial use of the Reservoir. *See id.; see also Kaiser Aetna,* 444 U.S. at 180, 100 S.Ct. 383 ("This is not a case in which the Government is exercising its regulatory power in a manner that will cause an insubstantial devaluation of petitioner's private property; rather, the imposition of the navigational servitude in this context will result in an actual physical invasion of the privately owned marina."). The State has impressed a private individual into service to provide the public unrestricted use of private property. *See, e.g., Lucas,* 505 U.S. at 1018, 112 S.Ct. 2886. Plaintiff has alleged sufficient facts to make out a takings claim.

## C. *Defendant's Arguments*

Defendant offers a number of arguments as to why the State's actions should

not amount to a taking. The Court addresses each argument in turn.

### 1. *Adverse Possession and the Takings Clause*

■ Defendant argues that no compensation is due when property is acquired by adverse possession. The crux of defendant's position is that adverse possession and compensation are mutually exclusive concepts-compensation is never paid when a private party adversely possesses property. Defendant is making the tautological argument that adverse possession by the state cannot be a taking because the state has adversely possessed property. In this factual situation, this Court disagrees. Adverse possession is bar to trespass and ejection proceedings. *See, e.g.,* R.I. Gen. Laws § 34–7–1. Here the government has taken possession of the property, and the government's actions are always subject to the Takings Clause of the Constitution. U.S. Const. art. VI, § 2 (the Supremacy Clause). Plaintiff is not challenging the State's title to the property, rather plaintiff is seeking the remedy of just compensation. It does not matter how the State takes property, only whether the Constitution mandates that the State pay compensation. *First English,* 482 U.S. at 314–15, 107 S.Ct. 2378.

Defendant cites several state court cases for the proposition that when a state acquires property by adverse possession or an easement by prescription there is no taking. This Court presents a brief summary of those state court decisions cited by defendant and other decisions found by the Court. Their persuasive value to this Court, however, is limited for two reasons. First, although state courts are equally competent to decide questions of federal law, a federal court is not bound by a state court's determination on an issue of federal law. Second, these state courts, for the

most part, were not interpreting the United States Constitution. They were interpreting their own state constitutions. The takings clauses in those state constitutions do not mirror the exact text of the United States Constitution, indeed some are significantly more detailed.

In 1985, the Ohio Supreme Court was faced with a claim that the City of Columbus had encroached on a private landowner's property. *State, ex rel. A.A.A. Investments v. City of Columbus*, 17 Ohio St.3d 151, 478 N.E.2d 773 (1985) (per curiam). Specifically, two streets had been constructed in such a manner that they occupied a small portion of property of the private landowner. *Id.* at 774. The Ohio Supreme Court only addressed the takings issue under the Ohio Constitution that contains significantly different wording than the federal Constitution. *Id.* The Court concluded that adverse possession is not a taking because the government has not taken property, rather the former owner has lost any claim of ownership over the property. *Id.* at 775.

In 1993, the Alaska Supreme Court determined that a municipality's prescriptive easement did not entitle a property owner to just compensation under the Alaska and United States Constitutions. *Weidner v. State*, 860 P.2d 1205, 1212 (Alaska 1993). The Court reasoned that after the prescriptive period had ended, any claim for just compensation was similarly extinguished. *Id.* The statute of limitations for prescription barred any takings claim, it ruled. *Id.*

The Maine Supreme Court recently followed the Alaska Court's reasoning and held that there was no claim for just compensation in a case where a municipality had acquired a prescriptive easement. *Stickney v. City of Saco*, 770 A.2d 592, 603 (Me.2001). The Court agreed that under the state constitution the private landown-

er must bring an action for inverse condemnation prior to the expiration of the prescriptive period. *Id.* The decisions of other state courts reflect similar reasoning. *See Board of County Comm'rs v. Flickinger*, 687 P.2d 975, 983–85 (Colo. 1984) (en banc) (concluding that adverse possession of a road, pursuant to state statute, was not a taking); *Commonwealth v. Stephens*, 407 S.W.2d 711, 712 (Ky.1966) (rejecting the lower court's conclusion that the state constitution requires compensation in the case of adverse possession and holding that "since the original owner has lost his claim of title, the state is no longer taking his property."); *Rogers v. Marlin*, 754 So.2d 1267, 1273 (Miss.Ct.App.1999) ("[D]amages are never a part of adverse possession, which is what a prescriptive easement is. Unlike eminent domain or a petition for a public way across the property of another without the benefit of the law of dominant/servient tenements, the original owner of the property over which the prescriptive easement in question runs has long since forfeited his right to demand payment for the easement over his property."); *Dunnick v. Stockgrowers Bank of Marmouth*, 191 Neb. 370, 215 N.W.2d 93, 96 (1974) (concluding that the Takings Clause does not bar the state from acquiring property by adverse possession, especially where it does so on behalf of the public, and the owner must exercise his or her rights within the statutory possession period); *City of Ashland v. Hardesty*, 23 Or.App. 523, 543 P.2d 41, 43 (1975) (holding that the Takings Clause in the Oregon Constitution does not prohibit adverse possession by the State); *Petersen v. Port of Seattle*, 94 Wash.2d 479, 618 P.2d 67, 70 (1980) ("A 10–year period of time, however, together with the requisite elements of adverse possession would, in a case such as this, have vested the Port with a prescriptive avigation right in plaintiffs' property.

That avigation easement, if prescriptively acquired, would not be compensable.").

In many of the state decisions on this issue, the state courts held that the party was precluded from bringing the takings claim after the statutory period of adverse possession had been completed although the party could have brought a takings claim prior to the end of that statutory period. *See, e.g., Weidner*, 860 P.2d at 1212. This is a misstatement of what is transpiring in adverse possession and prescription cases. The property interest is not acquired by the government until the adverse possession and prescriptive period has been completed. A plaintiff could not bring a takings claim until the possession or prescription period had been completed because, until that time, the government had not taken a property interest. In the case of adverse possession, prior to the end of the statutory period, the adverse possessor has no rights to the property. *See, e.g.*, R.I. Gen. Laws § 34–7–1. A record owner could bring an action of trespass and ejectment. Under the trespass claim, the record owner could seek damages for the trespass. Under the ejectment claim, the record owner could stop the adverse possession clock from running and enjoin the putative adverse possessor from continued possession of the property. As the putative adverse possessor had no property rights, however, the record owner could not make out a takings claim.

Similarly in the case of a prescriptive easement, the record owner could bring an action for trespass and ejection. There is no property interest, yet, that has been taken away from the record owner. Therefore, there has been no taking prior to the completion of the statutory period. In this case, because the public was using the Reservoir, and not the State, plaintiff had no claim against the State of any kind prior to the end of the prescriptive period.

Plaintiff could only sue private individuals for trespass. As there was no state law that mandated that plaintiff allow access to these individuals, prior to the end of the prescriptive period, there was no state action and no takings claim could have been alleged.

If the takings clock were to stop at the moment the adverse possession clock has run, then the record owner as against the government is in a curious Catch 22 situation. He or she had no takings claim prior to the completion of the adverse possession prescription period, but would be similarly barred from having a takings claim after the period was completed. This Court does not sanction this bonanza for the government at the intersection of property law and constitutional law.

Many of these state court cases (as defendant argues) rely on the Supreme Court decision, *Texaco v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982), for the proposition that the State can adversely possess property and that such possession is not subject to the Takings Clause. *Texaco v. Short*, however, has nothing to do with adverse possession or prescription by the state. In *Texaco v. Short*, the Supreme Court was faced with several constitutional challenges to the State of Indiana's Mineral Lapse Act. The Act provided "that a severed mineral interest that is not used for a period of 20 years automatically lapses and reverts to the current surface owner of the property, unless the mineral owner files a statement of claim in the local county recorder's office." 454 U.S. at 518, 102 S.Ct. 781. The Supreme Court held that such a lapse was not subject to the Takings Clause. *Id.* at 530, 102 S.Ct. 781. The Court reasoned that this property may be abandoned, that the owner has no right to compensation, and that it is "the owner's failure to make any use of the property-and not the action

of the State-that causes the lapse of the property right." *Id.*

*Texaco v. Short,* despite its broad language, is not controlling here. In *Texaco v. Short,* the statute allowed the extinguishment of a property right based on abandonment. *Id.* at 518–20, 102 S.Ct. 781. Land cannot be abandoned. Upon extinguishment, any mineral rights reverted back to the land from which they had been severed. *Id.* This reversion is between two private individuals, much like the typical situation of adverse possession, where the government would not be required to provide compensation. *See id.* Here, the State assumes title, without compensation, allowing the public to permanently physically occupy the record owner's land to effectuate a public easement on a man-made reservoir, eliminating the owner's right to exclude people from its property. *Texaco v. Short* does not, as a matter of law, bar plaintiff's takings claim.

The Takings Clause was meant to protect private individuals from excessive government intrusion on their property rights. *See, e.g., Nollan,* 483 U.S. at 835 n. 6, 107 S.Ct. 3141. Simply because an area of law may be ancient and well settled does not mean that it trumps the mandates of the United States Constitution. The Fifth Amendment contains a limitation on governmental power vis a vis private property. U.S. Const. Amend. V. This Court recalls the words of Justice Holmes: "We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change." *Pennsylvania Coal Co.,* 260 U.S. at 416, 43 S.Ct. 158; *see also Nollan,* 483 U.S. at 841–42, 107 S.Ct. 3141 ("California is free to advance its 'comprehensive program,' if it wishes, by using its power of eminent domain for this 'public purpose,' see U.S. Const. Amdt. 5; but if it wants an easement across the Nollan's property, it must pay for it.").

The government is not like another private individual, and the Constitution through the Takings Clause recognizes that distinction. The government has the power of eminent domain. The government has the power to regulate land use. Had the government taken the property by eminent domain, it would have been a taking and just compensation would have been due to the owner. *See Nollan,* 483 U.S. at 831, 107 S.Ct. 3141. Had the government created an easement over the property by legislative action, just compensation would have been due. *See id.* at 834–37, 107 S.Ct. 3141 (reasoning that since a requirement of an "uncompensated conveyance of the easement outright would violate the Fourteenth Amendment," the conveyance of an easement as a condition for a permit also requires compensation unless there is an essential nexus between the legitimate state interest and the condition); *see also Opinion of the Justices (Public Use of Coastal Beaches),* 139 N.H.82, 649 A.2d 604, 611 (1994) ("Because the bill provides no compensation for the landowners whose property may be burdened by the general recreational easement established for public use, it violates the prohibition contained in our State and Federal Constitutions against the taking of private property for public use without just compensation.").

Had the state legislature regulated the use of the Reservoir, in such a way that required private property owners to allow the public to use their property unfettered, just compensation would have been due. *See Nollan,* 483 U.S. at 837, 107 S.Ct. 3141. Had the government conditioned further benefits on the private individual allowing access to the property, a taking

might have occurred. *See id.; Dolan*, 512 U.S. at 386, 114 S.Ct. 2309 (discussing exactions and the essential nexus test). The government cannot escape the Takings Clause by opting to sit by until title is transferred to it, and then claim that it is not subject to the United States Constitution. The Takings Clause and adverse possession and prescription statutes cannot be mutually exclusive. The State must abide by the terms of the United States Constitution. U.S. Const. art VI, § 2.

### 2. *The Use of an Inherent Sovereign Power*

Defendant also claims that the State must exercise an act of sovereignty to effectuate a taking. If the State is not acting as a sovereign, defendant argues, then the State should be treated as any other private individual would be. To be acting as a sovereign, defendant claims, the State must exercise either its eminent domain power or its police power, neither of which it utilized here. This argument has no merit. Unlike a private individual, the State must abide by the U.S. Constitution in its actions. U.S. Const. amend. XIV. Additionally, the State acquired an easement on behalf of the public, something that a sovereign, but no private individual, can do. Furthermore, if the State is not using its police power or eminent domain power, then the State action falls outside the public use requirement of the Takings Clause and the State could not act on behalf of the public. *See Hawaii Hous. Auth.*, 467 U.S. at 240, 104 S.Ct. 2321 (holding that public use is synonymous with the state's police power).

### 3. *Background Principles of State Law*

Defendant also argues that because adverse possession and prescription are background principles of state property law, there can be no taking. Insofar as

the State has engaged in a permanent physical occupation of plaintiff's property, the Court need not delve into the state's background principles of property law. *See Lucas*, 505 U.S. at 1027, 112 S.Ct. 2886. Instead, the Court must treat this as if the State took the property by eminent domain. A background principle analysis is only required when the government regulates out all economically beneficial use of the property. *Id.* Even if the background exceptions of property law applied here, no U.S. Supreme Court precedent establishes that the situation presented here would fall under that exception. A background principle in property law exception occurs when a property right that was allegedly taken is determined to have never been part of the property in dispute. *See, e.g., Stevens*, 854 P.2d at 456. Simply because a party had notice of a law is not sufficient to render it a background principle. *See Palazzolo*, 533 U.S. at 629–30, 121 S.Ct. 2448. The property interest here was owned by a private entity and taken by the State, and therefore was always part of the property that plaintiff owned.

This Court concludes that plaintiff has alleged a takings claim that would normally be sufficient to survive a motion to dismiss. But there are other principles applicable here.

### STATUTE OF LIMITATIONS AND DOCTRINE OF LACHES

 Defendant makes various arguments that this claim is time-barred by the statute of limitations. In general, 42 U.S.C. § 1983 governs claims for just compensation. *City of Monterey*, 526 U.S. at 710, 119 S.Ct. 1624. Because § 1983 does not contain its own statute of limitations, the Court must examine state law for a limitations period analogous to the constitutional wrong asserted. Takings claims sound in tort. *Id.* at 709, 119 S.Ct. 1624.

The statute of limitations for a tort action in Rhode Island is three years. R.I. Gen. Laws § 9–1–14; *see also Pearman v. Walker,* ·512 F.Supp. 228, 234 (D.R.I.1981) (holding that an action against a Rhode Island municipality under § 1983 is governed by the statute of limitations for personal injuries).

■■■ To determine if the claim is time-barred, this Court must determine when the taking occurred and when any takings claim accrued. Plaintiff argues that its takings claim did not begin to accrue until the Rhode Island Supreme Court rendered its decision in 2001. Defendant argues that the takings claim accrued as soon as the State built the boat ramp in 1965.

As already discussed, this Court holds that the taking occurred in 1975, at the moment the property was adversely possessed and an easement by prescription was created.[6] Prior to 1975, plaintiff had only a claim for trespass against the state for the boat ramp. As to the use of the Reservoir by the public, plaintiff had no claim against the state at all, but only against private individuals for trespass.

Concluding that the taking occurred in 1975 does not resolve the issue of whether this claim is time-barred. The Court must determine when a takings claim accrued. As this Court has already discussed, a takings claim is not ripe for federal court review until there is a final decision by the state court on the merits. *Williamson,* 473 U.S. at 186–87, 105 S.Ct. 3108.

Determining when a claim is ripe for federal court review, in this case however, does not answer whether this case is time-barred. In a typical takings case, if there

is such a thing, the owner of the property has control of the litigation-that is, the owner would be the plaintiff in both the state court and any federal court proceedings. For example, the owner would challenge a given state regulation in the state courts, and if plaintiff lost and the regulation was upheld, could proceed to the federal courts to seek compensation. That plaintiff could appeal the state court decision to the United States Supreme Court, if compensation had been denied, or if the claim became ripe for lower federal court review, plaintiff could commence an action in a United States District Court. *Williamson* addressed this litigation scenario. 473 U.S. at 175, 105 S.Ct. 3108.

In contrast, here, Pascoag was the defendant at the state level because the State sought a declaration of its rights. Pascoag did not have to wait for the State to initiate its action before it had a cognizable takings claim. Pascoag's predecessor in title had a number of remedies in state court in 1975, but took advantage of none of them. Pascoag's predecessor could have sought to quiet title to establish that the prerequisite determination that the State had committed a takings had occurred. It could have sued for trespass and ejectment, prompting the State to raise the defense of adverse possession and prescription. It could have argued that based on the State's open and notorious occupancy, the State had engaged in a de facto condemnation of the property and sought compensation. In short, Pascoag's predecessor in title in 1975 had a cause of action in state court for just compensation. It did not exercise that right. Instead,

---

**6.** Even if the placement of the boat ramp constituted a permanent physical occupation of plaintiff's property and resulted in a taking at that time, that fact would not change the determination of the date that the taking by adverse possession occurred. This Court is

not faced with a claim based on the presence of the boat ramp, but a claim based in the State's acquisition of the title to the land under the boat ramp by adverse possession. These are two distinct events.

Pascoag and all its predecessors in title sat idly by and waited for twenty-six years after the cause of action for just compensation accrued-until the State asserted its adverse possession and prescription claim. Pascoag's predecessor may not have had a ripe cause of action in federal court in 1975 but it did have a ripe cause of action in state court in 1975 to determine its property rights and seek just compensation. Indeed, any compensation due to plaintiff's predecessor under the Takings Clause would have been the value of the property interests taken in 1975. That cause of action was time-barred years ago.

The State's three year statute of limitations for personal injury begins to run on the accrual of a tort claim. R.I. Gen. Laws § 9–1–14. For these purposes, the claim accrued, or was ripe in state court, when plaintiff's predecessor was aware or should have been aware of the injury. Since the Rhode Island Supreme Court determined that the State's presence was open, notorious, and hostile, placing the then owner on notice of its presence, the owner should have been aware that the taking had occurred. The statute of limitations began to accrue in 1975 and the cause of action became time-barred in 1978.

 This Court is well aware that a federal takings claim is ripe only after a state court renders a final decision on the merits, and the statute of limitations does not begin to run in a federal takings claim until the claim is ripe under federal law. *See, e.g., New Port Largo, Inc. v. Monroe County*, 985 F.2d 1488, 1493 (11th Cir. 1993). It would be truly bizarre, however, to allow this claim to proceed. For state law purposes, this claim is twenty-three years too old, yet it is only ripe for federal law purposes now. This Court cannot sanction such an absurd result. Here, plaintiff and its predecessors in title, through repeated inaction, let their rights

fritter away. They had multiple chances to take control of the situation and failed to do so. This Court concludes that because the underlying state claim for just compensation is barred by the statute of limitations, this federal claim is similarly barred by the statute of limitations.

Even if this claim is not a cause of action at law that is barred by the statute of limitations, the claim nonetheless would be barred by the equitable doctrine of laches. To reward plaintiff and its predecessors in title for sleeping on their rights for twenty-six years offends the notion that a party must come to an equity court with clean hands. *See Codex Corp. v. Milgo Elec. Corp.*, 717 F.2d 622, 633 (1st Cir.1983) ("The maxim of 'he who comes into equity must come with clean hands' of necessity gives wide range to a court's use of 'discretion to withhold punishment of behavior which it considers not to warrant so severe a sanction.' ") (quoting *Norton Co. v. Carborundum Co.*, 530 F.2d 435, 442 (1st Cir. 1976)). The Court cannot sanction proceeding with a claim that is so utterly stale.

 The claim, at the very least, is barred by the doctrine of laches. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir.1993) (holding sua sponte dismissal is not erroneous when defense of statute of limitations has not been waived); *Street v. Vose*, 936 F.2d 38, 39 (1st Cir. 1991) (per curiam) (affirming sua sponte dismissal of complaint on statute of limitations grounds). The doctrine of laches is an equitable defense barring a claim for relief, prior to the running of the limitations period, "where a party's delay in bringing suit was (1) unreasonable, and (2) resulted in prejudice to the opposing party." *K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 (1st Cir.1989). Clearly, a twenty-six year delay in bringing suit is unreasonable. Clearly, defen-

dant has been prejudiced by this twenty-six year delay. The situation as it existed in 1975 cannot be replicated in making a determination of just compensation as of that time.

For all the reasons discussed, at this time, plaintiff cannot maintain a cause of action for just compensation for the taking that occurred in 1975. This Court concludes that plaintiff's claim is barred by the tort statute of limitations. If plaintiff's claim is deemed an equitable one it would be barred by the doctrine of laches. Therefore, Count I of the complaint must be dismissed.

## REMAINING STATE LAW CLAIMS

 Counts II, III, and IV of plaintiff's complaint assert purely state law claims. This Court declines to exercise supplemental jurisdiction over those claims. Supplemental jurisdiction allows a federal court to hear both state and federal claims if they would ordinarily be expected to be tried in one judicial proceeding. 28 U.S.C. § 1367(a). Supplemental jurisdiction, however, is discretionary. *Penobscot Indian Nation v. Key Bank of Maine*, 112 F.3d 538, 564 (1st Cir.1997). As § 1367 states, the Court may decline to exercise jurisdiction if the Court has dismissed all claims over which it has original jurisdiction.

 Here, because the Court has dismissed Count I, the only federal claim in the complaint, the Court declines to retain jurisdiction over the remaining state law claims. *See id.* Therefore, the state law claims are dismissed without prejudice.

## CONCLUSION

Because Count I of plaintiff's complaint is time-barred, the Court grants defendant's motion to dismiss. As Count I is the only federal claim asserted by plaintiff, the remaining state law claims contained

in Counts II, III, and IV are dismissed without prejudice for lack of federal question jurisdiction.

The Clerk shall enter judgment for defendant to that effect, forthwith.

It is so ordered,