Arthur Joseph SHEEHAN,
Plaintiff, Appellant,

v.

James MARR, Police Chief, City of Gloucester, et al., Defendants, Appellees.

No. 98–1813.

United States Court of Appeals, First Circuit.

Heard Sept. 14, 1999.

Decided March 27, 2000.

Nancy S. Tierney for appellant.

Bradford N. Louison with whom Merrick, Louison & Costello was on brief for appellees.

Before LIPEZ, Circuit Judge, COFFIN and CAMPBELL, Senior Circuit Judges.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Following his involuntary retirement as a police lieutenant for the City of Gloucester, Massachusetts ("the City"), plaintiff-appellant Arthur Sheehan brought a complaint in the District Court for the District of Massachusetts pursuant to the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). The district court awarded summary judgment in favor of the defendant-appellees, Gloucester Chief of Police James Marr and the City of Gloucester. Sheehan now appeals. We affirm in part and reverse in part and remand for further proceedings not inconsistent with this decision.

## I. BACKGROUND

Sheehan was a member of the Gloucester Police Department from 1965 to 1994. Beginning in 1984, Sheehan received treatment for hypertension. In August and October, 1992, and August, 1993, he was hospitalized due to episodes of chest pain, some of which occurred at work. Then fifty-two years old, Sheehan did not return to active duty after the 1993 hospitalization.

In October, 1993, Dr. Madhu Thakur conducted a medical examination of Sheehan at defendants' request. After examining Sheehan and consulting Sheehan's personal physician's records, Thakur determined that Sheehan suffered from hypertension and hypertensive heart disease. Based upon his review of the job description for a Gloucester police officer, Thakur concluded that Sheehan should permanently retire from the police force, but noted that he could perform non-stressful desk duties.

On November 4, 1993, Chief Marr submitted an application for involuntary accidental disability retirement on Sheehan's behalf with the Division of Public Employee Retirement Administration ("PERA"). *See* Mass. Gen. Laws ch. 32, §§ 7 & 16 (1999).[1] A panel of three physicians then examined Sheehan. The panel unanimously concluded that he was physically incapacitated, that he was substantially incapable of performing his job, and that his incapacity was likely to be permanent. Based upon the medical panel's determinations and a statutory presumption that hypertension and heart disease are job-related, *see* Mass. Gen. Laws ch. 32, § 94, PERA concluded that Sheehan qualified for accidental disability and recommended that he be retired from the Gloucester police force.[2]

---

1. Mass. Gen. Laws ch. 32, § 16 provides:

   (a) Any head of a department who is of the opinion that any member employed therein should be retired for superannuation, ordinary disability or accidental disability, in accordance with the provisions of section five, six, or seven, as the case may be, may file with the board on a prescribed form a written application for such retirement.

   Mass. Gen. Laws ch. 32, § 7 provides, in relevant part, that a "member in service" such as Sheehan,

   who is unable to perform the essential duties of his job and that such inability is likely to be permanent, before attaining the maximum age for his group by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties at some definite place and at some definite time on or after

   the date of his becoming a member or prior to such date while any provision of this chapter relating to noncontributory pensions was applicable to him, without serious and willful misconduct on his part, upon his written application on a prescribed form filed with the board and his respective employer or upon such an application by the head of his department after a hearing, if requested ... shall be retired for *accidental disability.* ...

2. Mass. Gen. Laws ch. 32, § 94 provides:

   [A]ny condition of impairment of health caused by hypertension or heart disease resulting in total or partial disability or death to a uniformed member of a paid fire department or permanent member of a police department ... shall, if he successfully passed a physical examination on entry into

On June 28, 1994, the Gloucester Contributory Retirement Board ("the Board") conducted a hearing to address Sheehan's retirement.[3] Sheehan was present and represented by counsel. The Board found that Sheehan was totally and permanently incapacitated with regard to his job duties due to hypertension. As there was no permanent "light duty" in the Gloucester Police Department, the Board ordered Sheehan's retirement, pursuant to Mass. Gen. Laws ch. 32, § 7. On August 10, 1994, pursuant to Mass. Gen. Laws ch. 32, § 21(1)(d), the Commissioner of PERA approved the Board's decision granting Sheehan accidental disability retirement.

Sheehan appealed from this decision to the Gloucester District Court ("the state court") pursuant to Mass. Gen. Laws ch. 32, § 16(3)(a). Upon Sheehan's request, the state court remanded the matter to the Board for an evidentiary hearing, at which Sheehan's personal physician, Dr. Robert Jedrey, testified that unless Sheehan's job stress was reduced, Sheehan was "at risk" due to his hypertension. On October 19, 1994, the Board again voted to retire Sheehan.

Once again, Sheehan appealed from the retirement decision. The state court affirmed the Board's second decision on December 6, 1994. In a detailed opinion, the state court determined that the Board's decision to retire Sheehan was based upon substantial evidence. The state court's decision was "final" under the disability scheme, see Mass. Gen. Laws ch. 32, § 16(3)(a), and Sheehan did not seek certiorari review by the Massachusetts Superior Court of that decision.

On May 24, 1994, Sheehan filed an administrative complaint of age and disability discrimination with the Massachusetts Commission Against Discrimination ("MCAD"). Sheehan asserted that defendants had wrongfully failed to provide the reasonable accommodations for his hypertension that he had requested. These accommodations included two fifteen-minute breaks and a half-hour lunch break, or reassignment to a less stressful position such as court officer. Sheehan also alleged before the MCAD that Marr had evidenced age bias in an exchange he purportedly had with Marr on December 21, 1993, in which Sheehan inquired if defendants would rehire him if his condition improved in a couple of years, and Marr responded by asking how old Sheehan would be. When Sheehan answered, Marr allegedly asked him, "Do you display (sic) any advantage of the police department hiring a person that age over hiring a recruit?" Sheehan filed a similar complaint of age and disability discrimination with the Equal Employment Opportunity Commission ("EEOC").

On September 26, 1995, the MCAD issued a determination of lack of probable cause, finding that Sheehan's requested accommodation was unreasonable and that defendants' actions were not motivated by Sheehan's age or disability. On August 15, 1996, the EEOC similarly determined that Sheehan did not establish a violation of the ADA or the ADEA. Sheehan requested and obtained a right-to-sue letter.

In May, 1996, Sheehan brought this action for age and disability discrimination in the United States District Court for the District of Massachusetts, seeking reinstatement, back pay, attorney's fees, and costs. Defendants filed a motion for summary judgment, asserting, inter alia, that they had offered Sheehan reasonable accommodation of his disability (by offering him a quieter night shift, which he declined) and that Sheehan's requested accommodations were not reasonable. On May 20, 1998, the district court conducted a hearing on the summary judgment mo-

such service, or subsequently successfully passed a physical examination, which examination failed to reveal any evidence of such condition, be presumed to have been suffered in line of duty, unless the contrary be shown by competent evidence.

3. The Board is not a party to this action.

tion and allowed the motion in a ruling from the bench.

The district court found, first, that Chief Marr was not properly a separate defendant in this action. It went on to hold that the case "stumbles at the threshold" in view of the state retirement board's determination that Sheehan could not perform a police officer's duties pursuant to the Commonwealth's statutory involuntary retirement scheme. Under the *Rooker–Feldman* doctrine, the court concluded, it had no jurisdiction to review the state court's judgment on this score. As to the age discrimination claim, the district court stated that it "would be difficult" to find the required discriminatory animus, despite Marr's possible stray remarks about Sheehan's age. Even if Marr possessed the requisite animus, the court concluded, such animus was not the cause of Sheehan's involuntary retirement.

## II. *DISCUSSION*

■ This Court reviews orders for summary judgment de novo, construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor. *See Houlton Citizens' Coalition v. Town of Houlton*, 175 F.3d 178, 184 (1st Cir.1999).

### A. *Disability Discrimination*

■ Sheehan contends that the district court erred in determining that the state court's adjudication of Sheehan's involuntary retirement precluded federal jurisdiction over his ADA claim. He argues that he did not have the opportunity to raise, and the Gloucester court did not adjudicate, whether defendants had discriminated against him on the basis of disability, as such discrimination is defined for purposes of the ADA. We agree that *Rooker–Feldman* is not a bar and hold that the district court should have proceeded to the merits of Sheehan's ADA claim. While, as appellees contend, other hurdles may preclude recovery on that claim, we are not well positioned to deal with the substance of the ADA claim in this appeal. Accordingly, we vacate and remand for further proceedings in the district court. We emphasize that nothing herein should be viewed as validating the merits of Sheehan's ADA claim; we hold merely that the district court erred in precluding federal jurisdiction on *Rooker–Feldman* grounds.

■ The *Rooker–Feldman* doctrine prohibits federal district and circuit courts from reviewing state court judgments.[4] Where a party did not actually present its

---

**4.** The *Rooker–Feldman* doctrine is derived from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). In *Rooker*, plaintiffs first sought Supreme Court review, by writ of error, of a decision of the Indiana Supreme Court affirming an Indiana circuit court judgment adverse to plaintiffs. The United States Supreme Court dismissed the writ of error on the ground that the federal question raised therein was untimely. *See Rooker*, 261 U.S. at 117, 43 S.Ct. 288. Plaintiffs then brought a bill in equity in the federal district court for Indiana, seeking a declaration that the judgment of the Indiana circuit court be declared void because it conflicted with the Contract Clause and the Fourteenth Amendment. The Supreme Court dismissed the bill for lack of jurisdiction, stating that no court of the United States other than itself could entertain a proceeding to reverse or modify the judgment for errors of that nature, as such a proceeding would be an exercise of appellate jurisdiction. *See Rooker v. Fidelity Trust Co.*, 263 U.S. at 415–16, 44 S.Ct. 149.

In *Feldman*, the District of Columbia Court of Appeals, which by statute governed bar admissions in the District of Columbia, had declined to waive a bar rule requiring graduation from a law school accredited by the American Bar Association. The plaintiffs brought suits in the District Court for the District of Columbia, challenging the District of Columbia Court of Appeals' rulings as contravening the Fifth Amendment and the Sherman Act. The Supreme Court held that the district court lacked subject matter jurisdiction over the complaints to the extent that they sought review of the Court of Appeals' denials of their petitions for waiver, but could exercise jurisdiction over a constitutional challenge to the rule itself. *See Feldman*, 460 U.S. at 487, 103 S.Ct. 1303.

federal claims in state court, *Rooker–Feldman* forecloses lower federal court jurisdiction over claims that are "inextricably intertwined" with the claims adjudicated in a state court. *See Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303. A federal claim is inextricably intertwined with the state-court claims "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *See Hill v. Town of Conway,* 193 F.3d 33, 39 (1st Cir.1999).

Sheehan's ADA claim cannot be regarded as inextricably intertwined with the state court's involuntary retirement determination. To be sure, there is some overlap: in both proceedings, it is necessary to consider Sheehan's medical condition, the essential functions of his job, and Sheehan's inability to perform those functions without accommodation. Other disputed issues that require consideration under the ADA, however, were not before the state court: notably, whether Sheehan could perform essential job duties *with* reasonable accommodation as defined under the federal statute, and whether any adverse employment action against Sheehan was due to discrimination on the basis of his disability. *See Tardie v. Rehabilitation Hosp. of Rhode Island,* 168 F.3d 538, 541 (1st Cir.1999) (to prevail on ADA claim, plaintiff must prove ability to perform essential job functions either with or without reasonable accommodation); *Thomas v. Contoocook Valley Sch. Dist.,* 150 F.3d 31, 38 (1st Cir.1998) (discharged teacher entitled to litigate issue of disability discrimination under ADA even after state court determination that her termination was for cause). Hence, the district court erred in applying *Rooker–Feldman* to Sheehan's ADA claim.

■ Our holding is consistent with numerous disability cases in which courts have ruled that the related doctrine of collateral estoppel does not preclude litigation of the issue of reasonable accommodation under the ADA.[5] The Supreme Court recently held that Social Security Disability Insurance ("SSDI") claims did not inherently conflict with ADA claims because, inter alia, the Social Security Administration disability determination does not take into account the possibility of reasonable accommodation. *See Cleveland v. Policy Management Sys. Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 1602, 143 L.Ed.2d 966 (1999). Hence, employees are entitled to an opportunity to explain discrepancies between statements about their disabilities made in pursuing SSDI benefits and in litigating their ADA claims. *See id.* 119 S.Ct. at 1604. Several circuits have similarly held that employees are not necessarily estopped from pursuing ADA claims even though their disabilities had been adjudicated in the context of other benefit schemes. *See, e.g., Motley v. New Jersey State Police,* 196 F.3d 160, 163 (3d Cir. 1999) (state accidental disability retirement); *Aldrich v. Boeing Co.,* 146 F.3d 1265, 1268 (10th Cir.1998) (workers' compensation); *D'Aprile v. Fleet Servs. Corp.,* 92 F.3d 1, 5 (1st Cir.1996) (private employer's benefit plan); *see also Thomas,* 150 F.3d at 38. In contrast, preclusion has been applied where the state court considered whether the employee could perform the essential duties of the job *with* reasonable accommodations. *See Pena v. Houston Lighting & Power Co.,* 154 F.3d 267, 269 (5th Cir.1998) (federal long-term disability benefits determination tracked language of ADA).

Defendants also suggest that Sheehan could have raised the issue of disability-

---

**5.** Although res judicata, collateral estoppel, and *Rooker–Feldman* are separate doctrines, they have a "close affinity" to one another. *Valenti v. Mitchell,* 962 F.2d 288, 297 (3d Cir.1992); *see also Charchenko v. City of Stillwater,* 47 F.3d 981, 983 n. 1 (8th Cir.1995) ("We note that *Rooker–Feldman* is broader than claim and issue preclusion because it does not depend on a final judgment on the merits. Aside from this distinction the doctrines are extremely similar."); 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4469, at 663–64 (1981).

based discrimination under the ADA in his statutory appeal from the retirement determination.[6] *See* Mass. Gen. Laws ch. 32, § 16(3)(a). We disagree. Filing a charge with the MCAD or the EEOC was a prerequisite to bringing any state or federal court action for disability discrimination. *See* Mass. Gen. Laws ch. 151B, § 5 (1999); 42 U.S.C. § 12117 (1999); *see also Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278 (1st Cir.1999). Moreover, if, following such agency proceedings, Sheehan had wished to pursue his disability discrimination claim in a state court, he was required to proceed in the superior court of the Commonwealth, not the state's district courts. *See* Mass. Gen. Laws ch. 151B, § 6. Given the above impediments, Sheehan's election to have the Gloucester District Court review the matter of his involuntary retirement, and his failure to at the same time seek ADA and ADEA relief in that court, cannot be construed to have barred him from seeking relief under the ADA and ADEA in a federal court. *Cf. Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 85, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (state-court judgment has preclusive effect in § 1983 suit in federal court where federal claim could have been litigated in the state-court proceeding).[7]

We conclude, therefore, that the state's statutory framework for involuntary retirement was inadequately designed to serve as a forum for redressing the disability discrimination allegedly motivating defendants' failure to accommodate Sheehan's disability and initiation of the retirement process. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999) (*Rooker–Feldman* doctrine precludes consideration only of federal claim alleging injury caused by state court judgment, not of federal claim alleging prior injury that state court failed to remedy). Hence, the district court erred in ruling that the *Rooker–Feldman* doctrine barred Sheehan's ADA claim. We accordingly vacate and remand to the district court for further consideration of that claim.

■ The district court did not itself reach the substance of the ADA claim. This would not necessarily preclude us from reaching the merits and affirming the entry of summary judgment against Sheehan, were we to find no triable issue and that defendants were otherwise entitled to prevail. *See Houlton Citizens' Coalition*, 175 F.3d at 184. This court has noted, however, that such an affirmance is discretionary, not mandatory, and has, at times, declined to affirm on alternative grounds where the district court never reached the alternative argument. *See, e.g., Cinelli v. City of Revere*, 820 F.2d 474, 479 & n. 1 (1st Cir.1987). Here, not only did the court not decide, but appellees have briefed the ADA issues only cursorily, and appellant has not briefed them at all (although he noted his pertinent factual position in his statement of facts). Given, inter alia, the novel and perhaps determinative effect of recent Supreme Court case law, *infra*, as well as the apparent confusion in the record as to the precise nature of Sheehan's requested accommodation, we return the ADA claim to the district court for its further consideration.

As stated earlier, the fact that we now remand should not be viewed as validating the ADA claim, which, on its face, suggests a number of problems, given especially the evidence relative to Sheehan's inability to perform the essential elements of the job even with reasonable accommodation. We leave to the district court whether or not to permit the parties to enlarge the summary judgment record. The district court,

---

**6.** The district court did not directly address this issue.

**7.** Nor does it appear that Sheehan could have raised the issue of disability-based discrimination in a certiorari review of the state court decision, as such review is limited to whether the state district court's retirement decision was supported by substantial evidence. *See Doherty v. Retirement Bd. of Medford*, 425 Mass. 130, 680 N.E.2d 45, 48 (1997).

after consideration of the ADA claim, may, if it is so persuaded, award defendants summary judgment once again or, of course, make any other determination of the matter it deems proper, including assigning the case for trial.

On remand, the district court should also determine the applicability of the Supreme Court's recent decision in *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999), decided after the district court's previous decision. In *Murphy,* the Supreme Court held that hypertension did not constitute a disability within the meaning of the ADA where (1) it was controlled by medication such that it did not substantially limit plaintiff's major life activities; (2) it did not significantly restrict plaintiff's ability to perform a class of jobs; and (3) the plaintiff was not otherwise regarded as disabled. *See id.* 119 S.Ct. at 2136–39. On appeal, defendants make mention of *Murphy* but do not present any fact-specific argument. Although the record indicates that Sheehan's hypertension was controlled by medication, at least to some degree, and that he could perform a desk job, it is insufficiently developed for us to determine whether defendants are entitled to summary judgment on this ground. Accordingly, we remand to the district court this issue and all others regarding Sheehan's ADA claim, to be resolved by that court not inconsistently herewith.

Upon remand, Sheehan's ADA claim is limited to the Town. In its summary judgment decision, the district court held that Marr was not a proper individual defendant in this case, and Sheehan does not appeal from that ruling.

### B. *Age Discrimination*

■ To the extent that Sheehan presses his claim of age discrimination on appeal, we conclude that he both abandoned it below and waived it on appeal by failing to argue it in a developed manner. In response to the district court's questioning about evidence of age discrimination, the following colloquy between the court and Sheehan's counsel ensued:

Ms. Tierney: And our basic argument remains, as it has since the outset, our first appearance in this Court, that the issue centers around the reasonable accommodations which could have been made that were not.

The Court: Well, that's not an age issue.

Ms. Tierney: No. I agree.

The Court: I'm first dealing with the age issue. *There's nothing on the age, I mean, is there?*

Ms. Tierney: *No. No, your honor.*

[Emphasis supplied.] Age discrimination was not thereafter discussed in the district court, although the court later dismissed Sheehan's ADEA claim expressly for lack of proof of animus, *supra.* On appeal, Sheehan does not discuss the district court's reasoning relative to his ADEA claim, and his discussion of *Rooker–Feldman* seems irrelevant to that claim. Accordingly, we affirm the district court's dismissal of Sheehan's ADEA claim. *See King v. Town of Hanover,* 116 F.3d 965, 970 (1st Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

We note further that the Supreme Court has recently held that state employees may not sue their employers pursuant to the ADEA, as that statute did not validly abrogate Eleventh Amendment immunity. *See Kimel v. Florida Bd. of Regents,* ——— U.S. ———, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).

*Affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.*

Each party shall bear its own costs.